INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE &
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW v STATE
OF MICHIGAN

Docket No. 201516. Submitted June 3, 1998, at Lansing. Decided September 18, 1998, at 9:05 A.M. Leave to appeal sought.

International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, UAW, and its Local 6000 brought an action in the Ingham Circuit Court against the state of Michigan and the Department of Corrections, seeking to enjoin the defendants from eliminating athletic director positions held by persons represented by the UAW at state correctional facilities while grievances regarding the elimination of the positions were pending. The court, William E. Collette, J., issued a preliminary injunction against the defendants. The defendants appealed.

The Court of Appeals *held*:

Whether a preliminary injunction should issue is determined by a four-factor analysis: harm to the public interest if an injunction issues; whether harm to the applicant in the absence of a stay outweighs the harm to the opposing party if a stay is granted; the strength of the applicant's demonstration that the applicant is likely to prevail on the merits; and a demonstration that the applicant will suffer irreparable injury if a preliminary injunction is not granted. In this case, the trial court erred in determining that the plaintiffs were likely to prevail on the merits. Subsection 215(6) and § 223 of 1996 PA 371, which arguably establish the position of athletic director, do not demonstrate that the Legislature specifically intended to fund athletic director positions and require that they be maintained such that the executive branch could not eliminate those positions. Const 1963, art 5, § 20, which provides that "[n]o appropriation shall be a mandate to spend," allows the executive branch to operate with less funds than appropriated and realize budget savings when it can.

Reversed. Restraining order dissolved.

1. INJUNCTIONS — PRELIMINARY INJUNCTIONS.

Whether a preliminary injunction should issue is determined by a four-factor analysis: harm to the public interest if an injunction issues; whether harm to the applicant in the absence of a stay out-

weighs the harm to the opposing party if a stay is granted; the strength of the applicant's demonstration that the applicant is likely to prevail on the merits; and a demonstration that the applicant will suffer irreparable injury if a preliminary injunction is not granted.

2. INJUNCTIONS — APPEAL.

The granting of injunctive relief is within the sound discretion of the trial court, although the decision must not be arbitrary and must be based on the facts of the particular case; on appeal, the trial court's findings of fact will not be overturned or modified unless they are clearly erroneous (MCR 2.613[C]).

3. CONSTITUTIONAL LAW — APPROPRIATIONS.

An appropriation by the Michigan Legislature is merely an authorization to spend, not a mandate to spend; the executive branch may operate on less funds than appropriated and realize budget savings when it can (Const 1963, art 5, § 20).

*Klimist, McKnight, Sale, McClow & Canzano, P.C.* (by *Ellen F. Moss*), for the plaintiffs.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Gary P. Gordon*, Assistant Attorney General, for the defendants.

Before: SAWYER, P.J., and KELLY and DOCTOROFF, JJ.

SAWYER, P.J. Defendants appeal from the grant of a preliminary injunction preventing them from eliminating certain positions within the Michigan Department of Corrections while grievances regarding the elimination of the positions were still pending. We reverse.

Whether a preliminary injunction should issue while a grievance procedure continues is determined by a four-factor analysis: (1) harm to the public interest if an injunction issues, (2) whether harm to the applicant in the absence of a stay outweighs the harm to the opposing party if a stay is granted, (3) the strength of the applicant's demonstration that the applicant is likely to prevail on the merits, and (4) a demonstration that the applicant will suffer irrepara-

ble injury if a preliminary injunction is not granted. *Michigan State Employees Ass'n v Dep't of Mental Health*, 421 Mich 152, 157; 365 NW2d 93 (1984); *Internat'l Union, United Automobile, Aerospace & Agricultural Implement Workers of America, UAW, Local 6000 v Michigan*, 194 Mich App 489, 510; 491 NW2d 855 (1992). The granting of injunctive relief is within the sound discretion of the trial court, although the decision must not be arbitrary and must be based on the facts of the particular case. *Roy v Chevrolet Motor Car Co*, 262 Mich 663, 668; 247 NW 774 (1933); *Holly Twp v Dep't of Natural Resources*, 440 Mich 891 (1992); *Dafter Twp v Reid*, 159 Mich App 149, 163-164; 406 NW2d 255 (1987). The trial court's findings of fact will not be overturned or modified unless they are clearly erroneous. *Dunlop v Twin Beach Park Ass'n, Inc*, 111 Mich App 261, 266; 314 NW2d 578 (1981); *Kern v City of Flint*, 125 Mich App 24, 27; 335 NW2d 708 (1983); see also MCR 2.613(C). Defendants challenge the court's ruling on factors 3 and 4.

Considering the third factor, we are not persuaded that plaintiffs are likely to prevail on the merits. Const 1963, art 5, § 20 specifically provides that "[n]o appropriation shall be a mandate to spend." That directive is clear: just because the Legislature has appropriated money does not mean that the executive branch is obligated to spend it. Rather, an appropriation is merely an authorization to spend. If the executive branch is able to operate on less funds and realize a budget savings, it should be applauded, not chastised and told to spend more. Plaintiffs rely on our opinion in *UAW, Local 6000 v Michigan, supra*, for support for the proposition that a specific legisla-

tive intent to fund a particular position represents an exception to the provision in Const 1963, art 5, § 20 that an appropriation is not a mandate to spend.

First, we would note that, in our opinion, *UAW, Local 6000* was incorrectly decided. Without citation of any Michigan authority, this Court in *UAW, Local 6000, supra* at 501, merely made the statement that the "executive branch possesses no inherent constitutional power to decline to spend in the face of a clear legislative intent and statutory directive to do so." That statement clearly contradicts the provision in Const 1963, art 5, § 20 that an appropriation is not a mandate to spend.

Second, *UAW, Local 6000* is distinguishable from the case at bar. In *UAW, Local 6000*, clearly there was a statutory directive to spend. That case involved the funding of a facility known as Lafayette Clinic, part of the Department of Mental Health. At that time, there was a specific statutory provision establishing the Lafayette Clinic. See MCL 330.1900 *et seq.*; MSA 14.800(900) *et seq.* Furthermore, the appropriations bill at issue specifically included a line-item appropriation for the operation of the Lafayette Clinic. *UAW, Local 6000, supra* at 496. However, in the case at bar, no provision in the appropriations bill at issue specifically creates the position of athletic director, nor is there any specific line-item appropriation for such a position. Therefore, even if we were persuaded that *UAW, Local 6000* was correctly decided, it would still be distinguishable from the case at bar.

The position of athletic director is specifically established, if anywhere, in subsection 215(6) and § 223 of 1996 PA 371. However, we do not agree that those sections demonstrate that the Legislature spe-

cifically intended to fund the athletic director positions. First, subsection 215(6) does not mandate the athletic director position. Rather, § 215 dealt with certain contingency adjustments to the appropriation bill in the event that the federal government "failed to enact comprehensive reforms in the federal cash welfare and medicaid programs . . . ." Subsection 215(1). Subsection 215(5) provided various line-item adjustments if the contingency occurred (i.e., there was no welfare reform), including reductions in the personnel appropriation to various correctional facilities. Subsection 216(6) provided that the adjustments with respect to some of those facilities was required to be made from the athletic director position. We do not read that as a legislative mandate to fund the athletic director position. Rather, we view it as a restriction on the use of the appropriation—the contingency reduction would have to come from that position rather than from some other portion of the personnel budget. That is, the executive branch could not reduce other personnel expenditures to satisfy the contingency reduction in order to keep the athletic director position at those specified facilities. It is a tremendous leap of logic to equate a mandate to eliminate a particular position at certain facilities under specific circumstances with a mandate to have that particular position at all facilities.

With respect to § 223, that section does not represent a mandate to fund a position known as "Athletic Director." The primary purpose of § 223 is to impose restrictions on the use of gym facilities and weightlifting equipment. The first sentence of that section restricts which prisoners are allowed the use of such facilities. The second sentence requires the depart-

ment to utilize athletic directors to monitor the prisoner use of those facilities. That section does not require the specific funding of an "Athletic Director" at each facility.

First, nothing in § 223 mandates that gym facilities or weightlifting equipment be provided to prisoners. It merely imposes restrictions on such facilities. Second, while the statute does use the term "athletic director," we are not persuaded that it refers to a specific position, i.e., an "Athletic Director." Rather, at most, it mandates that, if gym facilities and weightlifting equipment are provided, the use of the facilities and equipment shall be supervised by an appropriate employee. In other words, the department is required to have an employee supervise the prisoner use of the facilities. We do not read § 223 as indicating a legislative intent that those employees possess the title of Athletic Director, that the employee be classified into a specific position with the civil service, or that the person have the same responsibilities as associated with the position that did exist under the Athletic Director title.

The department did not eliminate all athletic personnel. Rather, it retained at each facility a corrections athletic coordinator. There is no indication that a corrections athletic coordinator cannot discharge the responsibility under § 223 to monitor prisoner use of gym facilities and weightlifting equipment. In short, to the extent that § 223 requires the establishment of a particular position, the position of corrections athletic coordinator satisfies that requirement. The title or civil service classification of the employee is irrelevant.

For the above reasons, we conclude that the trial court erred in determining that plaintiffs were likely to prevail on the merits. Rather, we conclude that the executive branch operated within its discretion in realigning positions within the Department of Corrections and in spending the funds appropriated by the Legislature. While a cynic might suggest that in the bizarre world of government efficiency is prohibited, in fact Const 1963, art 5, § 20 authorizes the executive branch to realize efficiencies where possible.

The decision of the trial court is reversed and the restraining order is dissolved. Defendants may tax costs.