MICHIGAN AFSCME COUNCIL 25 v WOODHAVEN-BROWNSTOWN
SCHOOL DISTRICT

Docket No. 299945. Submitted April 12, 2011, at Detroit. Decided May 3,
2011. Approved for publication June 16, 2011, at 9:10 a.m.

Michigan AFSCME Council 25 and its affiliate Local 3552, which
represented noninstructional employees of Woodhaven-Brownstown
School District, brought an action in the Wayne Circuit Court to
enjoin the school district from privatizing custodial, facility mainte-
nance, and transportation work performed by members of the bar-
gaining unit pending resolution of plaintiffs' unfair labor practice
charge before the Michigan Employment Relations Commission
(MERC). The court, Michael F. Sapala, J., granted a preliminary
injunction. Defendant sought leave to appeal. In lieu of granting
leave, the Court of Appeals peremptorily reversed in an unpublished
order, entered September 3, 2010 (Docket No. 299945). Plaintiffs
sought leave to appeal in the Michigan Supreme Court. In lieu of
granting leave, the Supreme Court vacated the Court of Appeals'
order and remanded the case to the Court of Appeals for expedited
plenary consideration. 488 Mich 974 (2010).

The Court of Appeals *held*:

1. When deciding whether to grant an injunction under
traditional equitable principles, a court must consider (1) the
likelihood that the party seeking the injunction will prevail on
the merits, (2) the danger that the party seeking the injunction
will suffer irreparable harm if the injunction is not issued, (3)
the risk that the party seeking the injunction would be harmed
more by the absence of an injunction than the opposing party
would be by the granting of the relief, and (4) the harm to the
public interest if the injunction is issued. Considering all of
these factors, the circuit court abused its discretion by granting
the preliminary injunction.

2. The irreparable-harm factor is an indispensible requirement
for a preliminary injunction. The circuit court in this case erred
when it found that plaintiffs would suffer irreparable harm if the
members of the bargaining unit lost their health insurance ben-
efits pending the resolution of the unfair labor practice charge
because plaintiffs failed to produce evidence of any particularized

harm that would result from the loss of health insurance. Nor did plaintiffs establish that their bargaining unit would be destroyed or that MERC could not craft an appropriate remedy if the preliminary injunction was not granted.

3. The question whether plaintiffs were given an opportunity to bid on the contract for noninstructional support services on an equal basis as other bidders was central to whether plaintiffs were likely to succeed on the merits. Contrary to the circuit court's conclusion, it was unlikely that plaintiffs would prevail in the MERC proceedings because their argument was dependent on their position that they were entitled to input into the terms of any request for proposal before the bidding process or to have the request-for-proposal terms drafted in a manner that would permit the bargaining unit an opportunity to submit a bid on terms that differed from those of other potential bidders. Plaintiffs were not so entitled.

4. In the context of labor disputes, public policy generally disfavors issuing injunctions absent a showing of violence, irreparable injury, or breach of the peace. None of those factors was present here, and the circuit court's speculation regarding the possible economic and emotional consequences of privatization was insufficient to justify an injunction.

5. The circuit court abused its discretion in evaluating the risk that plaintiffs would be harmed more by the absence of an injunction than defendant would be by the granting of the injunction given that the circuit court failed to account for the fact that the risk of economic harm to defendant was that it would be unable to recoup tax dollars spent for bargaining unit work and there was no evidence that defendant was provided with a means of recouping tax dollars in the event it succeeded in defending against the unfair labor practice charge in the MERC proceedings.

Reversed and injunction vacated.

*Miller Cohen, P.L.C.* (by *Bruce A. Miller* and *Robert D. Fetter*), for plaintiffs.

*Clark Hill PLC* (by *Thomas P. Brady, John L. Gierak, Mark W. McInerney,* and *Sarah A. Geddes*) for defendant.

Before: SERVITTO, P.J., and HOEKSTRA and OWENS, JJ.

PER CURIAM. Plaintiffs Michigan AFSCME Council 25 and its affiliate, Local 3552, a labor union that represents noninstructional employees of defendant Woodhaven-Brownstown School District, brought an action in circuit court to enjoin defendant from privatizing custodial, facility maintenance, and transportation work performed by members of the bargaining unit pending resolution of plaintiffs' unfair labor practice charge before the Michigan Employment Relations Commission (MERC). The circuit court granted a preliminary injunction. Defendant filed an application for leave to appeal and this Court, in lieu of granting leave to appeal, peremptorily reversed the circuit court's order. *Mich AFSCME Council 25 v Woodhaven-Brownstown Sch Dist*, unpublished order of the Court of Appeals, entered September 3, 2010 (Docket No. 299945). Thereafter, in lieu of granting leave to appeal, our Supreme Court vacated this Court's order and remanded the case to this Court for "expedited plenary consideration." *Mich AFSCME Council 25 v Woodhaven-Brownstown Sch Dist*, 488 Mich 974; 790 NW2d 831 (2010). We again reverse the circuit court's decision and vacate the preliminary injunction.

A court's issuance of a preliminary injunction is generally considered equitable relief. *Pontiac Fire Fighters Union Local 376 v City of Pontiac*, 482 Mich 1, 11; 753 NW2d 595 (2008). "The objective of a preliminary injunction is to maintain the status quo pending a final hearing regarding the parties' rights."[1] *Alliance for the Mentally Ill of Mich v Dep't of Community Health*, 231 Mich App 647, 655-656; 588 NW2d 133

---

[1] Injunctive relief is generally considered an extraordinary remedy that issues where justice requires, there is an inadequate remedy at law, and there is a real and imminent danger of irreparable injury. *Kernen v Homestead Dev Co*, 232 Mich App 503, 509; 591 NW2d 369 (1998); see also *Pontiac Fire Fighters*, 482 Mich at 8.

(1998). A trial court's grant of injunctive relief is reviewed for an abuse of discretion. *Mich Coalition of State Employee Unions v Civil Serv Comm*, 465 Mich 212, 217; 634 NW2d 692 (2001). "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007); see also *Pontiac Fire Fighters*, 482 Mich at 8. The trial court's factual findings are reviewed for clear error. *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 467; 719 NW2d 19 (2006); *Int'l Union, United Auto, Aerospace & Agricultural Implement Workers of America, UAW v Michigan*, 231 Mich App 549, 551; 587 NW2d 821 (1998). Issues involving the proper interpretation of a court rule or statute are reviewed de novo as questions of law. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009); *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

As a preliminary matter, we note that the parties' briefs on appeal include documentary evidence that was not presented to the circuit court. Enlargement of the record on appeal is generally not permitted. *Amorello v Monsanto Corp*, 186 Mich App 324, 330; 463 NW2d 487 (1990). Because neither party moved to amend the record pursuant to MCR 7.216(A)(4), we shall limit our review to the record presented to the circuit court at the time it considered plaintiffs' motion for a preliminary injunction. See *Golden v Baghdoian*, 222 Mich App 220, 222 n 2; 564 NW2d 505 (1997).[2]

---

[2] We note that if a party believes that a change of circumstances warrants modification or dissolution of an injunction, it may move for such relief in the trial court. See *City of Troy v Holcomb*, 362 Mich 163, 169-170; 106 NW2d 762 (1961). "[A]n injunction is always subject to modification or dissolution if the facts merit it." *Opal Lake Ass'n v Michaywé Ltd Partnership*, 47 Mich App 354, 367; 209 NW2d 478 (1973);

The parties do not dispute that plaintiffs had a right to seek injunctive relief from the circuit court pending resolution of their unfair labor practice charge by the MERC. Under the public employment relations act (PERA), MCL 423.201 *et seq.*, a charging party may petition a circuit court for "appropriate temporary relief or restraining order, in accordance with the general court rules, and the court shall have jurisdiction to grant to the commission or any charging party such temporary relief or restraining order as it deems just and proper." MCL 423.216(h). Therefore, plaintiffs had the burden of showing that a preliminary injunction should be issued. MCR 3.310(A)(4). "Traditional equity principles are a circuit court's guide to whether injunctive relief is 'just and proper'." *Local 229, Mich Council 25, AFSCME, AFL-CIO v Detroit*, 124 Mich App 791, 794-795 n 3; 335 NW2d 695 (1983).

We decline plaintiffs' invitation to apply the standards adopted by the Sixth Circuit Court of Appeals in *Ahearn v Jackson Hosp Corp*, 351 F3d 226 (CA 6, 2003), in considering whether to grant temporary injunctive relief to the National Labor Relations Board under § 10(j) of the National Labor Relations Act, 29 USC 160(j), to determine whether injunctive relief was appropriate in this case. Plaintiffs did not present this argument to the circuit court, leaving it unpreserved for appeal. See *City of Riverview v Sibley Limestone*, 270 Mich App 627, 633 n 4; 716 NW2d 615 (2006). Indeed,

see also *In re Prichard Estate*, 169 Mich App 140, 148; 425 NW2d 744 (1988). " 'A continuing decree of injunction directed to events to come is subject to adaptation as events may shape the need.' " *First Protestant Reformed Church of Grand Rapids v DeWolf*, 358 Mich 489, 495; 100 NW2d 254 (1960), quoting *United States v Swift & Co*, 286 US 106, 114; 52 S Ct 460; 76 L Ed 999 (1932). Because the matter before us involves only the preliminary injunction issued by the circuit court, the subsequent events addressed by the parties on appeal are not relevant.

the circuit court applied the four-part test urged by plaintiffs below, except that it considered the likelihood of plaintiffs succeeding on the merits in place of the "futility" factor proposed in plaintiffs' motion. A party may not take one position in the trial court and then seek redress in an appeal on a contrary ground. *Phinney v Perlmutter*, 222 Mich App 513, 544; 564 NW2d 532 (1997).

Moreover, we note that federal circuit courts disagree on the appropriateness of the standard for granting injunctive relief applied by the Sixth Circuit in *Ahearn*. See *Muffley ex rel Nat'l Labor Relations Bd v Spartan Mining Co*, 570 F3d 534, 541-543 (CA 4, 2009) (adopting a traditional equitable test). In light of this Court's decision in *Local 229*, 124 Mich App at 794-795 n 3, that traditional equitable principles apply, we agree that the circuit court applied the proper test for evaluating whether to grant a preliminary injunction. Nonetheless, we conclude that the circuit court failed to reach a reasonable and principled decision in its evaluation and application of the relevant factors.

When deciding whether to grant an injunction under traditional equitable principles,

> a court must consider (1) the likelihood that the party seeking the injunction will prevail on the merits, (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and (4) the harm to the public interest if the injunction is issued. [*Alliance for the Mentally Ill*, 231 Mich App 660-661.]

With respect to the first factor, we note that our Supreme Court has declined to consider a party's likelihood of success on the merits when the irreparable-

harm factor was not established. *Pontiac Fire Fighters*, 482 Mich at 13 n 21. Therefore, we shall first consider the irreparable-harm factor.

The irreparable-harm factor is considered an indispensible requirement for a preliminary injunction. *Id.* at 8-9. It requires a particularized showing of irreparable harm. *Id.* at 9. "[I]t is well settled that an injunction will not lie upon the mere apprehension of future injury or where the threatened injury is speculative or conjectural." *Dunlap v City of Southfield*, 54 Mich App 398, 403; 221 NW2d 237 (1974); see also *Pontiac Fire Fighters*, 482 Mich at 9 n 15. The injury is evaluated in light of the totality of the circumstances affecting, and the alternatives available to, the party seeking injunctive relief. *Mich State Employees Ass'n v Dep't of Mental Health*, 421 Mich 152, 167; 365 NW2d 93 (1984). "Equally important is that a preliminary injunction should not issue where an adequate legal remedy is available." *Pontiac Fire Fighters*, 482 Mich at 9.

In finding a danger of irreparable harm in this case, the circuit court focused on the loss of health insurance benefits to members of the bargaining unit if they were to be laid off pending the resolution of the unfair labor practice charge. In *Mich State Employees Ass'n*, 421 Mich at 167 n 10, our Supreme Court noted that certain circumstances, such as the loss of health insurance benefits, might be sufficient to establish irreparable harm to an employee affected by the loss of employment when there is a "serious immediate or ongoing need for medical treatment," but the *Mich State Employees Ass'n* Court was not presented with a request for injunctive relief on that ground. The plaintiff in that case was a discharged civil service employee who sought a preliminary injunction pending the resolution of a

grievance procedure. She alleged that she would not be able to feed herself and her son if the defendant was not restrained from discharging her and stopping her pay. *Id.* at 167. The trial court took no testimony and admitted no evidence before granting the preliminary injunction. *Id.* at 168. In remanding the case to the trial court for further proceedings, the Supreme Court held:

> *We do not hold that the absence of usable resources and of obtainable alternative sources of income with which to support one's self and one's dependents, coupled with the prospect of destitution, serious physical harm, or loss of irreplaceable treasured possessions, could never support a finding of irreparable injury in an appropriate case.* We merely hold that the issuance of a preliminary injunction preventing discharge pending final decision in the civil service grievance procedures must be determined under the standards articulated herein. [*Id.* (emphasis added).]

Later, however, in *Pontiac Fire Fighters*, 482 Mich at 10 n 20, the Supreme Court expressed doubt about the correctness of the "dictum" in *Mich State Employees Ass'n*, but, in any event, found that the record before it did not support application of that principle. The Court also observed that the MERC has a number of means available to it to remedy economic injuries, such as awarding back pay and reinstating a laid-off employee to make the employee whole. *Id.* at 10; see also MCL 423.216(b). The alleged injury in that case, which involved financial hardship for laid-off firefighters, was found insufficient to satisfy the requirement of irreparable harm because there existed an adequate remedy at law. *Pontiac Fire Fighters*, 482 Mich at 10.

In this case, there was no evidence that any affected union member would suffer the loss of medical treatment if defendant acted on either request for proposal and privatized certain services. Although plaintiffs' counsel asserted at the motion hearing that he had

witnesses willing to testify about their medical conditions and inability to afford health insurance, no affidavit from any member was presented. Under MCR 2.119(E)(2), when a motion is based on facts not appearing in the record, the trial court "may hear the motion on affidavits presented by the parties, or may direct that the motion be heard wholly or partly on oral testimony or deposition." An affidavit must be based on personal knowledge, "state with particularity facts admissible as evidence," and show that the affiant, if sworn as a witness, can testify competently to the facts stated in the affidavit. MCR 2.119(B)(1). Because plaintiffs did not file an appropriate affidavit and it would be speculative to conclude from the record that the requisite particularized irreparable harm would occur, the circuit court did not reach a principled decision in finding that the requisite irreparable harm showing was made. Contrary to plaintiffs' argument on appeal, it is not self-evident from the record that the requisite harm exists.

Plaintiffs' alternative claim that they will suffer irreparable harm by ceasing to exist in their current form if a preliminary injunction is not granted was not a basis for the circuit court's decision to grant the preliminary injunction. In any event, this Court's decision in *Van Buren Pub Sch Dist v Wayne Circuit Judge*, 61 Mich App 6; 232 NW2d 278 (1975), which is the basis for plaintiffs' argument, is somewhat inconsistent in its evaluation of whether the MERC could provide an adequate remedy if a school district is permitted to engage in privatization pending resolution of an unfair labor practice charge. Moreover, *Van Buren Pub Sch Dist* was decided before the Legislature amended MCL 423.215 to specifically address whether contracts with third parties should be a proper subject of collective bargaining. The statute presently provides, in pertinent part:

(3) Collective bargaining between a public school employer and a bargaining representative of its employees shall not include any of the following subjects:

*  *  *

(f) The decision of whether or not to contract with a third party for 1 or more noninstructional support services; or the procedures for obtaining the contract for noninstructional support services other than bidding described in this subdivision; or the identity of the third party; or the impact of the contract for noninstructional support services on individual employees or the bargaining unit. However, this subdivision applies only if the bargaining unit that is providing the noninstructional support services is given an opportunity to bid on the contract for the noninstructional support services on an equal basis as other bidders.

*  *  *

(4) Except as otherwise provided in subsection (3)(f), the matters described in subsection (3) are prohibited subjects of bargaining between a public school employer and a bargaining representative of its employees, and, for the purposes of this act, are within the sole authority of the public school employer to decide. [MCL 423.215(3) and (4).]

By contrast, the version of the statute in effect when *Van Buren Pub Sch Dist* was decided did not contain any provision that expressly addressed contracts with third parties, but rather required mandatory collective bargaining with respect to wages, hours, and other employment conditions. The question before the MERC as relevant to the preliminary injunction issued by the trial court in *Van Buren Pub Sch Dist* was whether the contracting of bus-transportation work performed by bargaining unit members was a mandatory subject of bargaining under MCL 423.215. In considering whether irreparable harm occurred, this Court focused on the harm that would occur to the union's bargaining posi-

tion if the school district were free to terminate the employment of bus drivers pending the MERC decision. It found the MERC's remedial system inadequate to ensure that there would still be something to bargain about in the event the MERC decided there was a duty to bargain. *Van Buren Pub Sch Dist*, 61 Mich App at 17. The Court viewed the passage of time as making the school district's decision irrevocable, explaining:

> In order to be certain that a MERC decision would not be rendered nugatory by the mere passage of time, the court was asked to insure that there would be something to bargain about, in the event MERC decided there was a duty to bargain. The court was concerned with preventing the overwhelming impact of a *fait accompli*. In order to make certain there would be something to bargain about, Van Buren had to be enjoined from shifting completely and irrevocably to its new transportation system. Time was of the essence in a way that MERC's remedial system was not designed to appreciate. Only a court of equity could provide an adequate remedy. [*Id.* at 17-18.]

At the same time, the facts before this Court indicated that the school district had failed to abide by the preliminary injunction. *Id.* at 31. Further, this Court had an opportunity to consider the actual MERC action, which was consolidated with the appeal of the trial court's contempt finding against the school district. In the MERC action, the school district's contemptuous behavior was considered by the MERC in deciding to remedy unfair labor practices by, among other things, requiring that the school district rescind its contract with the third party, reinstate services to those existing before the unlawful privatization, offer reinstatement and provide back pay to former employees, and bargain upon request with the union with respect to the privatization of bargaining unit work. *Id.* at 32. This Court upheld the MERC's remedies, finding that they were

"designed to return the parties to the bargaining positions they were in before the unfair labor practices were engaged in, in full recognition of the fact that in order to make the duty to bargain meaningful there must be something to bargain about." *Id.* at 33.

While this Court in *Van Buren Pub Sch Dist* thus upheld a trial court's determination that the passage of time would make the decision to privatize irrevocable and leave nothing to bargain about, when presented with the actual remedies that the MERC was able to fashion to return the parties to the status quo to provide for meaningful bargaining, in the face of the school district's contemptuous behavior, it is clear that the privatization did not become "irrevocable."

In this case, there may very well be union members who would decide to find other employment and not consider returning to the bargaining unit if plaintiffs succeed in the MERC. But there was neither evidence nor a finding by the circuit court that the bargaining unit would be totally destroyed if a preliminary injunction was not granted. Plaintiffs' own evidence that the membership in Local 3552 includes clerical, security, and food service personnel who are unaffected by the instant dispute contravenes any claim that the bargaining unit would be destroyed.

Because plaintiffs failed to establish that they would be eliminated if a preliminary injunction was not granted or that the MERC could not craft an appropriate remedy to protect collective bargaining rights, the circuit court did not abuse its discretion by failing to consider this circumstance when assessing the element of irreparable harm. Nonetheless, the circuit court did not reach a principled decision given its failure to require particularized irreparable harm with regard to

individual members of the bargaining unit affected by the privatization of their work.

While we conclude that the lack of evidence of a particularized injury alone provides support for defendant's argument that the preliminary injunction should be reversed, we also find merit to defendant's challenges to other relevant factors.

With respect to the first factor, it is apparent from the record that the issue central to the likelihood of plaintiffs succeeding on the merits of their unfair labor practice charge is whether they were given "an opportunity to bid on the contract for the noninstructional support services on an equal basis as other bidders." MCL 423.215(3)(f). While the circuit court stated that there were sufficient factual issues to conclude that plaintiffs were likely to succeed on the merits, the circuit court failed to address the legal merits of the unfair labor practice charge and, in particular, whether it is supported by the statutory language. The MERC's resolution of legal issues in the course of resolving an unfair labor practice charge is not binding on courts. See *Port Huron Ed Ass'n v Port Huron Area Sch Dist*, 452 Mich 309, 322-323; 550 NW2d 228 (1996). An agency's interpretation of a statute is "entitled to respectful consideration and, if persuasive, should not be overruled without cogent reasons. . . . But, in the end, the agency's interpretation cannot conflict with the plain meaning of the statute." *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 108; 754 NW2d 259 (2008). A statutory provision is ambiguous if it irreconcilably conflicts with another provision or is equally susceptible to more than a single meaning. *Fluor Enterprises, Inc v Dep't of Treasury*, 477 Mich 170, 177 n 3; 730 NW2d 722 (2007). Statutory provisions are read as a whole to determine legislative intent.

*Robinson v City of Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010). An undefined word or phrase is accorded its plain and ordinary meaning unless it is a term of art with a unique legal meaning. *People v Flick*, 487 Mich 1, 11; 790 NW2d 295 (2010).

Our consideration of the placement of the exception for bidding described in MCL 423.215(3)(f) and the requirement that there be an "opportunity to bid on the contract . . . on an equal basis as other bidders" reveals no ambiguity. The word "bid," in a contractual setting, denotes an offer. It is defined in *Random House Webster's College Dictionary* (1997) as "to offer (a certain sum) as the price one will charge or pay: *They bid $25,000 and got the contract.*" The phrase "equal basis as other bidders," examined in context, also is not ambiguous. It does not support plaintiffs' position that they were entitled to input into the terms of any request for proposal before the bidding process, or to have terms drafted in a manner that would permit the bargaining unit an opportunity to submit a bid on terms that differed from those of other potential bidders. This approach would put plaintiffs in a superior position to other bidders.

While opinions of the Attorney General are not binding on the courts, *Danse Corp v City of Madison Hts*, 466 Mich 175, 182 n 6; 644 NW2d 721 (2002), we find the Attorney General's interpretation of MCL 423.215(3)(f) in OAG, 2010, No 7249 (June 15, 2010), persuasive with respect to the legislative intent. In particular, we conclude that once the opportunity is afforded to a bargaining unit to bid for a contract on an equal basis with other bidders, the prohibition against collective bargaining concerning all listed subjects in MCL 423.215(3)(f) applies. Considered in this context, it is unlikely that plaintiffs will prevail in the MERC

proceedings so as to prevent defendant from going forward with either request for proposal with respect to custodial, facility maintenance, and transportation work. The circuit court's contrary conclusion regarding whether plaintiffs were given an opportunity to bid on an equal basis with other bidders lacks both factual and legal support.

With respect to the public-interest factor, it has been said that the private interests of union members are not tantamount to the public interest. *Alliance for the Mentally Ill*, 231 Mich App at 665-666. In the context of labor disputes, public policy generally disfavors issuing injunctions absent a showing of violence, irreparable injury, or breach of the peace. *Pontiac Fire Fighters*, 482 Mich at 8. Because plaintiffs failed to show irreparable injury and this case does not involve violence or a breach of peace, the circuit court did not reach a principled decision in evaluating the harm to the public interest. The circuit court's speculation regarding possible economic and emotional consequences of defendant's actions is insufficient to justify an injunction. *Id.* at 9.

The circuit court's speculation with respect to the harm to plaintiffs' members also permeated its evaluation of "the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief[.]" *Alliance for the Mentally Ill*, 231 Mich App at 661. Considering the burden imposed on plaintiffs to establish that they had the greater risk of harm, the circuit court did not reach a principled decision by finding that defendant would achieve "purported future savings" if it was allowed to privatize, but that, on balance, the potential harm to plaintiffs and their members outweighed the harm to defendant. As indi-

cated in *Alliance for the Mentally Ill*, the risk of economic harm to an entity such as defendant is that it would be unable to recoup tax dollars spent for bargaining unit work if it succeeds in the MERC. *Id.* at 666. There was no evidence in this case that defendant was provided with a means of recouping tax dollars in the event it succeeded in defending against the unfair labor practice charge in the MERC.

Considering all relevant factors, we conclude that the circuit court abused its discretion by granting the preliminary injunction. Accordingly, the circuit court's decision is reversed and the injunction is vacated. In light of our decision, it is unnecessary to consider defendant's challenge to the circuit court's decision not to require a bond as security for the preliminary injunction.

Reversed and vacated. This opinion is to have immediate effect pursuant to MCR 7.215(F)(2).

SERVITTO, P.J., and HOEKSTRA and OWENS, JJ., concurred.