# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM I. RAMANAUSKAS,

       Plaintiff-Appellant,

UNPUBLISHED
May 14, 2015

v

BLUE HORSESHOE HOLDING COMPANY and
JOSEPH R. HENNINGER III,

       Defendants-Appellees.

No. 322962
Oakland Circuit Court
LC No. 2014-139688-CZ

Before: FORT HOOD, P.J., and JANSEN and GADOLA, JJ.

PER CURIAM.

    Plaintiff appeals by leave granted[1] the trial court's order denying his motion for a preliminary injunction in this fraud action. On appeal, plaintiff argues that the trial court abused its discretion by making a legal error when it denied his motion on the ground that he "waited til [sic] the last minute" to attempt to redeem his house despite the fact that plaintiff still acted within the statutory redemption period. For the reasons stated herein, we affirm.

## I. STANDARD OF REVIEW

    This Court reviews for an abuse of discretion the trial court's decision whether to grant injunctive relief. *Thermatool Corp v Borzym*, 227 Mich App 366, 372; 575 NW2d 334 (1998). "The exercise of this discretion may not be arbitrary, but rather must be in accordance with the fixed principles of equity jurisdiction and the evidence in the case." *Davis v Detroit Fin Review Team*, 296 Mich App 568, 612; 821 NW2d 896 (2012). An abuse of discretion exists when the decision is outside the range of principled outcomes, *Detroit Fire Fighters Ass'n v Detroit*, 482 Mich 18, 28; 753 NW2d 579 (2008), and it may arise from the trial court's misunderstanding of controlling legal principles, *Davis*, 296 Mich App at 612-613. The trial court's findings related to the preliminary injunction are reviewed for clear error. *Int'l Union, United Auto, Aerospace & Agricultural Implement Workers of America v Michigan*, 231 Mich App 549, 551; 587 NW2d

---

[1] *Ramanauskas v Blue Horseshoe Holding Co*, unpublished order of the Court of Appeals, entered September 15, 2014 (Docket No. 322962).

821 (1998). Issues of statutory interpretation are reviewed de novo. *Williams v Enjoi Transp Solutions*, 307 Mich App 182, 185; 858 NW2d 530 (2014).

## II. ANALYSIS

Plaintiff contends that the trial court erred by denying his motion for a preliminary injunction because it implicitly concluded, in error, that he had failed to show a likelihood of success on the merits of his fraud claim. We conclude that although plaintiff established a likelihood of success on the merits of his fraud claim, the trial court properly denied the motion because plaintiff failed to show a risk irreparable harm from the denial of a preliminary injunction.

Generally, the procedure for obtaining a preliminary injunction is set forth in MCR 3.310(A), which provides, in pertinent part, that "the party seeking injunctive relief has the burden of establishing that a preliminary injunction should be issued." MCR 3.310(A)(4). The purpose of a preliminary injunction is "to preserve the status quo pending a final hearing, enabling the rights of the parties to be determined without injury to either party." *Pharm Research & Mfrs of America v Dep't of Community Health*, 254 Mich App 397, 402; 657 NW2d 162 (2002).

Injunctive relief is an extraordinary remedy that should issue only when justice requires. *Pontiac Fire Fighters Union Local 376 v Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008). When determining whether to grant a plaintiff's request for a preliminary injunction, a trial court must consider four factors: "(1) the likelihood that the party seeking the injunction will prevail on the merits, (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and (4) the harm to the public interest if the injunction is issued." *Davis*, 296 Mich App at 613.

### A. PLAINTIFF'S LIKELIHOOD OF SUCCESS ON THE MERITS

Regarding the first factor—the likelihood of prevailing on the merits—the underlying question is whether plaintiff's failure to redeem the property was the result of fraud on the part of one or more defendants. The trial court erred when it seemingly found that plaintiff failed to show a likelihood of prevailing on the merits of his fraud claim.

MCL 600.3240 provides, in pertinent part:

> (7) Subject to [the rules related to foreclosure sales, i.e., MCL 600.3238], for a mortgage executed on or after January 1, 1965, of commercial or industrial property, or multifamily residential property in excess of 4 units, the redemption period is 6 months from the date of the sale.

> (8) Subject to subsections (9) to (11) and [MCL 600.3238], for a mortgage executed on or after January 1, 1965, of residential property not exceeding 4 units, if the amount claimed to be due on the mortgage at the date of the notice of foreclosure is more than 66-2/3% of the original indebtedness secured by the mortgage, the redemption period is 6 months.

(9) For a mortgage of residential property not exceeding 4 units, if the property is abandoned as determined under [MCL 600.3241], the redemption period is 1 month.

(10) If the property is abandoned as determined under [MCL 600.3241a], the redemption period is 1 month or until the time to provide the notice required by [MCL 600.3241a(c)] expires, whichever is later.

(11) Subject to [MCL 600.3238], for a mortgage of property that is used for agricultural purposes, the redemption period is 1 year from the date of the sale.

(12) *If subsections (7) to (11) do not apply, and subject to [MCL 600.3238], the redemption period is 1 year from the date of the sale.* [Emphasis added.]

Neither party disputes that the statutory redemption period applicable to the Rochester Hills property was one year, and that the statutory redemption period in this case ended on March 19, 2014.

The right to redeem property following a foreclosure is "a statutory, legal right" that may be enlarged or abridged by the courts "only under unusual circumstances such as fraud." *Flynn v Korneffel*, 451 Mich 186, 201; 547 NW2d 249 (1996). In such cases, fraud must be proven by clear and convincing evidence. *Id*. The elements of fraud are: "(1) the defendant made a representation that was material, (2) the representation was false, (3) the defendant knew the representation was false, or his representation was made recklessly without any knowledge of the potential truth, (4) the defendant made the representation with the intention that the plaintiff would act on it, (5) the plaintiff actually acted in reliance, and (6) the plaintiff suffered an injury as a result." *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 230; 859 NW2d 723 (2014). "Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 408; 751 NW2d 443 (2008). That said, fraud may be established by circumstantial evidence. *Foodland Distrib v Al-Naimi*, 220 Mich App 453, 458; 559 NW2d 379 (1996).

Plaintiff offered proof—by way of the affidavit of his previous attorney, Arthur J. Rose III ("Rose")—that conversations between Rose and defendant Joseph R. Henninger ("Henninger") persuaded Rose to wait to give the redemption check to Henninger personally, instead of filing it with the Oakland County Register of Deeds, based purely on Henninger's own preference. To this end, Henninger made a representation that he would be at Rose's office shortly after their initial conversation on March 19, 2014, the last day of the statutory redemption period, and his representation was material because plaintiff's transfer of the redemption funds was the only necessary step remaining before plaintiff could redeem the Rochester Hills property. Thus plaintiff has adequately established the first element of a fraud claim.

Second, plaintiff has adequately established, by way of circumstantial evidence, *id*., that Henninger's assertion that he would meet Rose at Rose's office on March 19, 2014, was false and Henninger knew it was false when he made it, *Stephens*, 307 Mich App at 230. In Rose's

affidavit, he alleged that Henninger continued to lead him to believe that Henninger was on the way to his office, until approximately 4:15 p.m., when it was no longer possible for Rose to deliver the redemption check to the Oakland County Register of Deeds office from Rose's office in Warren, Michigan. At that time, Henninger ceased all communications with Rose, thereby giving plaintiff no reasonable possibility of redemption. While plaintiff has provided no direct evidence that Henninger knew the statements were false, "questions concerning the state of one's mind, including intent, motivation, or knowledge can be proven by circumstantial evidence." *Bergen v Baker*, 264 Mich App 376, 387; 691 NW2d 770 (2004). Based upon the timing of Henninger's swift change of plans, coupled with his complete cessation of further communications until the redemption period had passed, plaintiff has provided sufficient evidence to prove that his representation to Rose was false, and he knew it to be false, thereby supporting elements (2) and (3) of his fraud claim. *Stephens*, 307 Mich App at 230.

Next, plaintiff clearly showed that Henninger made his representations to Rose with the intention of Rose and plaintiff acting on them. *Id*. While the meeting was supposed to take place on the afternoon of the last day of the redemption period, the meeting was scheduled because of Henninger's desire to receive the redemption funds directly. Rose waited at his office for Henninger's arrival, and Henninger's statements that he was "leaving for [Rose's] office in five minutes," and asking which driving route he should take, were clearly designed to ease any concerns Rose had about the exchange of funds and cause him to stay at his office. Therefore, it is clear that Henninger intended for Rose, who was acting in a representative capacity for plaintiff, to rely on his statements, and that Rose actually did rely on Henninger's statements, satisfying elements (4) and (5) of his fraud claim. *Id*.

Finally, defendant adequately supported the requisite showing that he suffered an injury as a result of his reliance on Henninger's statements. *Id*. Regarding this element, defendants claim that, while plaintiff obviously suffered an injury because he was unable to redeem the Rochester Hills property, plaintiff is unable to show that he suffered an injury *as a result of his reliance on Henninger's statements*. To this end, defendants cite an unpublished opinion of this Court for the proposition that plaintiff could have redeemed the Rochester Hills property by simply mailing a check to the Oakland County Register of Deeds or to defendants on March 19, 2014, the last day of the redemption period. Unpublished opinions of this Court are not precedentially binding, MCR 7.215(C)(1), and regardless of whether we are persuaded by its holding that plaintiff could have redeemed the property by mailing a check to either defendants or the Register of Deeds, it is irrelevant to the determination of the cause of plaintiff's injury. Even if plaintiff knew that he could have mailed the check on March 19, 2014, to redeem the property, the proceedings below unequivocally showed that plaintiff was waiting to tender the money to Henninger in person, per Henninger's request. Plaintiff, apparently in good faith, agreed to personal delivery of the redemption funds to Henninger, and he was led to believe that Henninger would arrive at Rose's office on the afternoon of March 19, 2014. When Henninger failed to arrive, after the Register of Deeds office and post office had closed, plaintiff suffered harm directly traceable to Henninger's statements. Therefore, plaintiff has shown that he suffered injury as a result of Henninger's statements, and has shown a likelihood of success on the merits of his fraud claim. *Stephens*, 307 Mich App at 230.

## B. IRREPARABLE HARM

The second factor a trial court must consider before granting a preliminary injunction is "the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued." *Davis*, 296 Mich App at 613. A showing of irreparable harm is considered an indispensable requirement before a preliminary injunction can issue. *AFSCME Council 25 v Woodhaven-Brownstown School Dist*, 293 Mich App 143, 149; 809 NW2d 444 (2011). This factor requires a *particularized* showing of irreparable harm. *Pontiac Fire Fighters*, 482 Mich at 9. "In order to establish irreparable injury, the moving party must demonstrate a noncompensable injury for which there is no legal measurement of damages or for which damages cannot be determined with a sufficient degree of certainty." *Thermatool Corp*, 227 Mich App at 377. The injury must be actual, certain and great, *id*., and cannot be the mere apprehension of a future injury, *AFSCME Council*, 293 Mich App at 149. " 'Equally important is that a preliminary injunction should not issue where an adequate legal remedy is available.' " *Id.*, quoting *Pontiac Fire Fighters*, 482 Mich at 9. "[I]rreparable injury is not established by showing economic injury because such an injury can be remedied by damages at law." *Alliance for Mentally Ill of Mich v Dep't of Community Health*, 231 Mich App 647, 664; 588 NW2d 133 (1998).

Plaintiff is correct that real property, such as the land on which the Rochester Hills home sits, can be inherently unique, and therefore, equitable remedies are generally permitted to protect a party's interest in the land. See, e.g., *In re Smith Trust*, 480 Mich 19, 26-27; 745 NW2d 754 (2008) (noting that "[l]and is presumed to have a unique and peculiar value, and contracts involving the sale of land are generally subject to specific performance"). However, contemporaneous with the filing of the complaint, plaintiff filed a notice of lis pendens with the trial court. A notice of lis pendens establishes "constructive notice to a purchaser of any real estate" that the real estate is the subject of pending litigation, MCL 600.2701(1), and is "designed to warn persons who deal with property while it is in litigation that they are charged with notice of the rights of their vendor's antagonist," *Richards v Tibaldi*, 272 Mich App 522, 536; 726 NW2d 770 (2006). "A purchaser who acquires property after the commencement of a suit and the filing of a notice of lis pendens is bound by the proceedings because '[o]ne may not purchase any portion of the subject matter of litigation and thereby defeat the object of suit.' " *Id.*, quoting *Provident Mut Life Ins Co of Philadelphia v Vinton Co*, 282 Mich 84; 275 NW 776 (1937).

Plaintiff's motion requested that defendants be enjoined from "selling, transferring, or altering in anyway [sic] the property located at 645 Apple Hill Lane, Rochester Hills, Michigan." The notice of lis pendens negates the possibility of *irreparable* harm resulting from defendants' sale or transfer of the Rochester Hills property because the notice of lis pendens currently in place serves to preserve plaintiff's interest in the property and would require the return of the property to plaintiff. *Richards*, 272 Mich App 536. Further, any harm caused by defendants' alteration of the property could be remedied with monetary damages, a legal remedy. Therefore, plaintiff is unable to show either that he is at risk of *irreparable* harm as a result of defendants' sale or transfer of the property, *Pontiac Fire Fighters*, 482 Mich at 9, or that he is without a legal remedy if defendants alter the Rochester Hills home, *AFSCME Council 25*, 293 Mich App at 149. Plaintiff's failure to prove irreparable harm precludes the issuance of the injunction.

## C. COMPARATIVE HARM TO THE PARTIES

The next factor a trial court must consider when deciding whether to issue a preliminary injunction is the comparative harm to the parties. *Davis*, 296 Mich App at 613. Plaintiff is correct that defendants have never argued that a preliminary injunction would harm them. Further, plaintiff has alleged foreseeable harm, albeit not necessarily *irreparable*, if defendants were to sell, transfer, or alter the Rochester Hills property during the pendency of the lower court proceedings. Therefore, the comparative-harm factor supports an issuance of a preliminary injunction.

## D. HARM TO THE PUBLIC INTEREST

The final factor a trial court must consider before issuing a preliminary injunction is "the harm to the public interest if the injunction is issued." *Id*. While the public-interest factor is generally discussed in the context of union-employer disputes, this Court has noted that it also applies in cases involving "violence or a breach of peace." *AFSCME Council*, 293 Mich App at 157. That said, the instant case involves a distinctly private dispute between two individuals regarding the foreclosure of a residential property, and does not seem to implicate any public interests. Therefore, this factor is either not relevant to the instant dispute, or favors the issuance of a preliminary injunction.

## III. CONCLUSION

While the trial court erred by implicitly finding that plaintiff did not establish a likelihood of success on the merits, plaintiff has failed to show that he risks *irreparable* harm or harm without any legal remedy. Without a showing of irreparable harm, a preliminary injunction should not issue. Though the trial court committed legal error in implicitly finding that plaintiff did not have a likelihood of success on the merits of his fraud claim, it properly denied plaintiff's motion for a preliminary injunction. "A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason." *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822, 824 (2003). The trial court reached the correct result, albeit for the wrong reason, when it denied plaintiff's motion for a preliminary injunction.

Affirmed. Defendants, having prevailed on appeal, may tax their costs pursuant to MCR 7.219.

/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Michael F. Gadola