# STATE OF MICHIGAN

# COURT OF APPEALS

COLOMA CHARTER TOWNSHIP,

       Plaintiff-Cross-Defendant
Appellant,

v

BERRIEN COUNTY, BERRIEN COUNTY
SHERIFF'S DEPARTMENT, LANDFILL
MANAGEMENT COMPANY, INC, and
HENNESSY LAND COMPANY,

       Defendants-Appellees.

FOR PUBLICATION
September 6, 2016

No. 325226
Berrien Circuit Court
LC No. 13-000317-CZ

---

JOE HERMAN, SUE HERMAN, JAY JOLLAY,
SARAH JOLLAY, JERRY JOLLAY, NEAL
KREITNER, TONY PETERSON, LIZ
PETERSON, RANDY BJORGE, ANNETTE
BJORGE, and TINA BUCK,

       Plaintiffs-Appellants,

v

BERRIEN COUNTY,

       Defendant-Appellee.

No. 325335
Berrien Circuit Court
LC No. 05-003247-CZ

---

Before: O'CONNELL, P.J., and MARKEY and MURRAY, JJ.

MARKEY, J., (*concurring in part and dissenting in part.*)

These consolidated appeals concern whether the county's authority to "site" and "erect" buildings pursuant to the county commissioners act (CCA), MCL 46.1 *et seq.*, see MCL 46.11(b) and (d), has priority over the zoning ordinance of the Charter Township of Coloma (the township). I respectfully dissent, in part, from the majority opinion. Despite recognizing that Berrien County constructed a new building—the clear and only purpose of which is the indoor discharging of firearms—the majority concludes that these cases are controlled by the holding of

-1-

*Herman v Berrien Co*, 481 Mich 352; 750 NW2d 570 (2008). But *Herman* held only that the outdoor shooting ranges were not ancillary to a different, classroom-instruction-only building. The majority cites no language in the CCA to support its conclusion but instead relies on the idiom of "the tail wagging the dog." In my view, the dog in these cases is the CCA, which has supremacy over the tail, the Township's ordinances. Because the new structure is a "building," one must look to the language of the CCA for a basis to preclude the county from invoking its authority to "site" it. Principles of construction dictate that a statute must be enforced according to its plain terms, *Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005), and that "nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself." *Omne Financial, Inc v Shacks, Inc*, 460 Mich 305; 596 NW2d 591 (1999). I read nothing in the CCA to preclude the county from exercising its authority to site buildings to take advantage of previously constructed infrastructure. And, for the reasons I discuss *infra*, I believe this previously constructed infrastructure is ancillary to the newly constructed county building and indispensable to its normal use. For these reasons, I conclude that the circuit court's reasoning was sound in both cases and I would affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

These consolidated appeals concern whether a county's authority under the CCA to "site" and "erect" buildings, MCL 46.11(b) and (d),[1] has priority over the zoning ordinance of the township with respect to using an open-air, three-sided structure within which the defendant Berrien County Sheriff's Department conducts firearms training of law enforcement officers. During their training, the officers fire weapons from inside the structure toward targets located in a previously constructed shooting range outside the structure. The shooting range used is one of six outdoor shooting ranges that were the subject of prior litigation in Docket No. 325335 that resulted in our Supreme Court's ruling in favor of the plaintiff township residents seeking to enforce the township ordinance. *Herman* clarified the Court's prior decision of *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702; 664 NW2d 193 (2003), which held that, in general, the CCA has priority over local ordinances.

---

[1] MCL 46.11(b) and (d) provides:

> A county board of commissioners, at a lawfully held meeting, may do 1 or more of the following:
>
> * * * *
>
> (b) Determine the site of, remove, or designate a new site for a county building. The exercise of the authority granted by this subdivision is subject to any requirement of law that the building be located at the county seat.
>
> * * * *
>
> (d) Erect the necessary buildings for jails, clerks' offices, and other county buildings, and prescribe the time and manner of erecting them.

At the time of the prior litigation in Docket No. 325335, the fourteen-acre site at issue consisted only of an indoor (classroom) firearms' training building adjacent to the outdoor shooting ranges. In *Herman*, our Supreme Court reiterated the factual background of these cases:

> This case involves a piece of property that is located in Berrien County and Coloma Township. The property consists of a 14-acre parcel of land. The property is controlled by defendant, Berrien County, under a 20-year lease from a party that is unrelated to this case. The county entered into the lease in March 2005. The county leased the property with the intention of using it for a firearms training facility, which various law enforcement agencies would use for training exercises. Accordingly, in May 2005, the county contracted with DLZ Michigan, Inc., to design a master plan and conduct a feasibility study for the proposed facility. This master plan included constructing a building of more than 3,000 square feet at the center of the parcel to serve as a training and support building. This building would have a parking lot with 24 standard parking spaces (and three handicapped spaces), multiple outdoor light poles, and a driveway. The facility would also have numerous outdoor shooting ranges. The ranges were to be set up like the spokes of a wheel that require the shooter to fire out from the center of the parcel. The center of the parcel is where the building would be located. . . . The county initially planned on building the ranges first and erecting the building later. During the course of this litigation, construction of both the shooting ranges and the building was started and is now completed. [*Herman*, 481 Mich at 353-356 (footnotes omitted).]

The Court explained that the outdoor shooting ranges violated township ordinances:

> Operation of the county's shooting ranges would contravene several local ordinances. First, under the township's zoning ordinance, the shooting ranges are not a permitted land use given the property's current zoning status (primary agricultural). Additionally, gun clubs are not permitted in this zoning status unless the Coloma Charter Township Board has issued a special land use permit, which the county has not received. Finally, the gun ranges produce noise levels that purportedly exceed the township's anti-noise ordinance.[5]

> ---
> [5] The parties have not litigated the merits of whether the shooting ranges violate the anti-noise ordinance because, up to this point, the main dispute hinged on whether the shooting ranges were immune from this ordinance. Nonetheless, the county's own feasibility study predicted that the gun range would produce noise levels above 87 decibels extending to approximately 370 of the surrounding acres. This apparently violates the anti-noise ordinance, which prohibits noise levels above 65 decibels between 7:00 a.m. and 10:00 p.m. and 55 decibels at all other times. [*Herman*, 481 Mich at 356, n 5.]

The *Herman* plaintiffs "are a group of individuals who own property located in close proximity to the shooting ranges." *Id*. at 358. "In late November 2005, plaintiffs filed a declaratory judgment action that aimed to stop operation of the facility. The complaint alleged

-3-

that the county's facility was prohibited by the township's zoning ordinance; and the plaintiffs' amended complaint additionally alleged that the facility violated the township's anti-noise ordinance." *Id*. Relying on *Pittsfield*, the circuit court granted defendant Berrien County (the county) summary disposition and this Court in a split decision affirmed.[2] Our Supreme Court reversed, holding that the CCA authority extended only to "site" buildings and such land uses that are ancillary to the county building and indispensable to its normal use. *Herman*, 481 Mich at 367-369. Stated otherwise, the Court held that "the scope of the CCA's priority over local regulation is limited to ancillary land uses that are indispensable to the building's normal use." *Id*. at 368-369. The Court reasoned that the outdoor shooting ranges were not indispensable because the indoor training and support could be conducted without the outdoor shooting ranges' being located next to the building and therefore held that "under the CCA, the shooting ranges are not given priority over the township's ordinances." *Id*. at 370-371. The Court remanded the case to the circuit court for further proceedings consistent with its opinion. *Id*. at 371.

On remand, the circuit court entered a permanent injunction on November 10, 2008, enjoining the county "from utilization of the shooting ranges heretofore constructed by it in Coloma Township, Berrien County, Michigan." A copy of the injunction was filed in the clerk's office signed "approved as to form" by then county counsel R. McKinley Elliott, who would, in January 2012, be elected a member of the county board of commissioners. The county apparently was never served with the injunction, and no proof of service was filed in the circuit court file.

After the Supreme Court's decision in *Herman*, the county began conducting necessary law enforcement firearms shooting training at an existing private gun club in the township, known as the Coloma Rod and Gun Club (CRGC). Apparently to accommodate the additional use, CRGC constructed six additional shooting ranges for the use of law enforcement firearms training and other firearms shooting. In October 2010, the township brought an action to enjoin CRGC's expansion of its nonconforming use. On November 27, 2012, the circuit court ruled in the township's favor by finding that the CRGC's expansion of its gun ranges by adding and using six new pistol bays was a nuisance per se that the court ordered abated. This order was not appealed.

Seeking to lawfully use the previously constructed shooting ranges adjacent to its classroom training facility, the county passed a resolution on August 8, 2013 to construct a "shooting range building" at the outdoor range property. The resolution noted that *Herman* had decided outdoor ranges were not indispensable to the indoor training building and that the county had unsuccessfully attempted to obtain a special land use permit from the township. The resolution then provided:

> **WHEREAS**, Corporate Counsel advised the County Board on August 1, 2013, that there was legal support for the construction of a shooting range building on the range area of the Training Facility which would be consistent with the "indispensable use" standard of the *Herman* decision, thereby falling under the authority provided in the [CCA], and exempt from Township regulation.

---

[2] *Herman v Berrien Co*, 275 Mich App 382; 739 NW2d 635 (2007), rev'd 481 Mich 352 (2008).

**NOW, THEREFORE, BE IT HEREBY RESOLVED** that the Berrien County Board of Commissioners authorize and directs the County Administrator to proceed to have a Shooting Range Building designed and constructed on the shooting range area of the County Training Facility at 7110 Angling Road, Coloma Charter Township, and authorizes expending the minimal funds necessary . . . to accomplish said building construction not to exceed $11,500.00; and take such further necessary action with the landowner to remain consistent with the County's lease of said property. [Berrien County Board of Commissioner's Resolution A1308168, August 8, 2013.]

Based on the foregoing resolution, the county constructed an open-air, pole-barn type structure consisting of a covered cement slab that is completely open on one side, facing the longest of the previously constructed outdoor shooting ranges. Defendants describe it as follows:

The Gun Range Building consists of a 43x20 foot concrete pad with, a 42x16 foot building, comprised of eight (8) 6x6 posts and five (5) 4x6 posts and a full roof constructed over the concrete pad. All of the posts are permanently cemented into the ground. Partial walls exist on three (3) sides of the Gun Range Building with open areas at the top and bottom of each wall. An overhang and awning type structure exists along the fourth open wall (front side) so as to allow shooting out to the Current County Range and to provide additional safety for shooting and sound baffling, and provide a shelter for firearms training. The walls, ceiling, and overhang are permanent in their construction and the open areas allow for proper ventilation and drainage, while at the same time, allowing firearms training, including live firing of weapons, to be conducted within the Gun Range Building with the actual shooting occurring from within the building out to targets located at the other end of the Current County Range. The County's Gun Range Building was completed in September of 2013, and after completion, it and the Current County Range were used by the Sheriff and deputies to conduct the required firearms training . . . [Footnote omitted.]

On November 14, 2013, the *Herman* plaintiffs a filed a motion seeking enforcement of the 2008 injunction and asking that the circuit court hold the county in civil and criminal contempt for violating it (Docket No. 325335). Also, on the same date, the township filed a new action in the circuit court seeking to enjoin the county and its sheriff's department from discharging firearms at the site in violation of the township's zoning ordinance (Docket No. 325226). The circuit court held a number of joint hearings, and issued a series of rulings in 2014 that modified the 2008 injunction, ruled in favor of the county to allow use of the shooting range building, and found, after a trial, that the county was not guilty of criminal contempt.

After an initial evidentiary hearing, the circuit court on January 17, 2014 issued an opinion and order modifying the 2008 injunction while the litigation was pending and denying the township's request for a preliminary injunction. The circuit court, citing *Ali v Detroit*, 218 Mich App 581; 554 NW2d 384 (1996), and dictionary definitions, found that the county would likely prevail on its claim that the new structure was a "building" within the meaning of the CCA. The court reasoned "that the assembly is a permanent box like structure having a roof used for firearms skill proficiency assessment and training. It has walls that enclose space albeit

with gaps for ventilation." The court also found that "the assembly was permanently fixed to the ground at a specific location with a roof and three walls enclosing for purposes confining Sheriff's deputies participating in the assessment and training for which the assembly was specifically designed and constructed."

The circuit court in its initial opinion and order also rejected plaintiffs' argument that the structure could not be a county "building" because it was not listed in the examples noted in MCL 46.11(d), as cited in *Herman*, 481 Mich 367, n 14. The court ruled that the statute was clear and unambiguous and that "county buildings" included any "buildings" that are "owned, leased, operated, used or maintained by a county for activities authorized by law." The circuit court further ruled that the county's motive (to avoid *Herman*) was not relevant but rather what mattered was the result of the county's actions. In that regard, the circuit court opined:

> The result of the Board's action was that the shooting range building was erected and sited near the Classroom. That building was purposely erected and the site was purposely determined to take advantage of the Ranges which the Board was advised could then be used for shooting despite *Herman* because, as an indispensable use, the shooting would no longer be subject to the [township's] ordinances.
>
> The Board had the power to erect "necessary buildings". Whether the building was necessary was a [county board] legislative decision which the judiciary should not second guess. . . .

Nevertheless, the circuit court found that "firearms assessment and training for the sheriff's deputies is necessary" and required by MCOLES (Michigan Commission on Law Enforcement Standards).[3] *Id.* The circuit court explained:

> The mandatory MCOLES Annual Firearms Standard for Active Duty Law Enforcement Officers - Primary Duty Weapon (2010) requires both knowledge and an annual assessment of mechanical firearms skills proficiency. While the knowledge component may be taught in the Classroom Building that existed at the time *Herman* was decided, the assessment component requires shooting at multiple targets, placed at multiple distances, use of cover, close range shooting, mandatory combat reload, appropriate handling of stoppages, shooting from different cover positions, shooting with the support hand only, discussions on deadly force issues, and decision making. . . .

The circuit court also found that the evidence supported that the use of the building for live-fire training improved safety and reduced noise. Thus, the circuit court determined "the record supports a preliminary conclusion that the Board properly exercised its power to erect a necessary county building [MCL 46.11 (d)] and to determine its site [MCL 46.11 (b)]."

---

[3] See 1965 PA 203, MCL 28.602 *et seq*.; see also: http://www.michigan.gov/mcoles.

The circuit court also determined that the shooting range adjacent to the open end of the building met *Herman*'s "indispensable use" test, opining:

> The normal use of the shooting range building is to facilitate safe and quiet outdoor firearms assessment and training for sheriff's deputies. . . . The evidence supports a preliminary finding that the shooting range building could not be used for outdoor firearms training without shooting. While consuming only a small fraction of the assessment and training time, the shooting is the essence of the assessment and training. Safety dictates that the shooting not take place without the protection offered by the Range. In other words, the Range is indispensable to the normal use of the shooting range building.

The circuit court then entered an order temporarily modifying its 2008 injunction to permit the sheriff and actively employed sheriff's deputies to use the outdoor shooting range

> for shooting any weapon carried on duty by the shooter for MCOLES required annual assessments and recommended training from the confines of the shooting range building while under the direct supervision of an MCOLES recognized firearms instructor on Tuesdays, Wednesdays and Thursdays between 8:00 a.m. and 5:00 p.m., except on days observed as holidays . . . .

On March 28, 2014, the county filed a motion for summary disposition seeking dismissal of the civil and criminal contempt claims. A hearing was held on May 19, 2014, and on the basis of governmental immunity, see *In re Bradley Estate*, 494 Mich 367; 835 NW2d 545 (2013), the circuit court granted the motion with respect to the plaintiffs' claim for civil contempt. The circuit court's August 20, 2014 order left unresolved the question of criminal contempt.

The *Herman* plaintiffs on August 4, 2014 moved for summary disposition on criminal contempt, but the circuit court ruled that the criminal contempt claims required assessment of witness credibility at a trial. Later, on December 2, 2014, the court conducted a trial on the criminal contempt charge and issued an opinion and judgment of acquittal. The circuit court found that although plaintiffs had proved beyond a reasonable doubt that the county was aware of the 2008 *Herman* decision and that the county violated the injunctive order by beginning use of the outdoor shooting ranges on September 4, 2013, the plaintiffs "failed to prove beyond a reasonable doubt that the violation was willful" because of lack of evidence to support a finding "beyond a reasonable doubt that the violation was an intentional violation of a known legal duty." The circuit court found that all testifying witnesses were credible and determined that no agent of the county had actual knowledge that the court had entered its 2008 injunctive order. The court also found "reasonable doubt that the County had imputed knowledge through Commissioner Elliott in his then capacity as County's Corporate Counsel." There was no proof of service in the file, and Elliot testified he signed a blank page "approved as to form" at the request of opposing counsel for an order to close the circuit court file after the Supreme Court's decision in *Herman*. The circuit court also found that the county board was respectful of the *Herman* decision and acted on advice of counsel that its actions would not violate that case, which also created reasonable doubt regarding the charge of criminal contempt.

With respect to the civil litigation, the township moved for summary disposition under MCR 2.116(C)(10) on August 29, 2014. The *Herman* plaintiffs joined in this motion for summary disposition on September 29, 2014. After hearing arguments on the motions, the circuit court on October 13, 2014 issued an opinion and order granting defendants summary disposition in both cases under MCR 2.116(I)(2). The court modified its permanent injunctive order in the *Herman* case (Docket No. 325335), and denied the township's request in the new case (Docket No. 325226) to declare that defendants were in violation the permanent injunctive order and the *Herman* plaintiffs' request to enforce the permanent injunction. The court issued a modified opinion and order on October 23, 2014, that only changed the statement that the then scheduled trial would concern *criminal* contempt rather than *civil* contempt.

The circuit court's analysis in its October 23, 2014, opinion mirrored that of its opinion of January 17, 2014, when the court denied the township's request for a preliminary injunction and granted temporary relief from the 2008 permanent injunction. The circuit court found as a matter of law that the shooting range structure is a "county building" under the terms of MCL 46.11(b) and (d). The court again concluded that whether the shooting range building was "necessary" was a legislative decision and not one that the court could second guess. But, as in its preliminary ruling, the circuit court again discussed that firearms' training was necessary to satisfy MCOLES standards and that the shooting range building "enhanced safety and reduced noise, the Board rationally concluded that the gun range building was a 'necessary building'." The circuit court ruled, as a matter of law, "the Board properly exercised its power to erect a necessary county building [MCL 46.11 (d)] and to determine its site [MCL 46.11 (b)]."

With respect to whether the shooting range adjacent to the shooting range building met *Herman*'s "indispensable use" test, the circuit court once again determined that it did.

> The normal use of the shooting range building is to facilitate safe and quiet outdoor firearms training for sheriff's deputies. This normal use contrasts with normal use of the nearby Classroom Building at issue in *Herman* which was for indoor classroom training . . . . The shooting range building could not be used for outdoor firearms and training assessment without shooting. While consuming only a small fraction of the training time, the shooting is the essence of the assessment and training. Safety dictates that the shooting could not take place without the protection offered by the Range. In other words, the Range is indispensable to the normal use of the shooting range building.
>
> Plaintiffs' ancillary/primary dichotomy has no basis in reason or in *Herman*. It is axiomatic that if the Board has the power to site a building, it has the power to site the building's normal and primary use. The power to site a building would be meaningless without the power to site its primary use, and, as *Herman* held, its indispensable ancillary uses. Implicit in *Herman* is that the Board's power to site a building includes the power to site its primary use, and the only restraint imposed by *Herman* is on the Board's power to site dispensable ancillary uses. If shooting is the primary use, it consumes the *Herman* restraint.

Based on the foregoing analysis, the circuit court concluded that the county's authority under the CCA to site necessary county buildings "trumps [the township's] zoning and noise

ordinances." The circuit court therefore denied the plaintiffs' motion for summary disposition and granted summary disposition to defendants under MCR 2.116(I)(2).

The circuit court also modified its permanent injunction by providing an exemption for

the one shooting range directly adjacent to and southwest of the open front of the shooting range building constructed . . . pursuant to Resolution A1308168 . . . for firearms shooting solely for MCOLES required annual assessments and recommended training from the confines of the shooting range building while under the direct supervision of a qualified firearms training Instructor. [Modified Permanent Injunctive Order, entered October 13, 2014 (LC-05-3247-CZ-M).]

In each case, the circuit court denied reconsideration by order entered December 11, 2014. Plaintiffs now appeal by right. This Court, by order of February 13, 2015, consolidated these appeals "to advance the efficient administration of the appellate process."

## II. ANALYSIS FOR DOCKET NO. 325226 AND DOCKET NO. 325335

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim and must be supported by affidavits, depositions, admissions, or other documentary evidence. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). A court must view the proffered evidence in the light most favorable to the party opposing the motion and properly grants the motion when the undisputed facts establish a party is entitled to judgment as a matter of law. *Maiden*, 461 Mich at 120.

This Court also reviews questions of statutory interpretation de novo. *Pittsfield*, 468 Mich at 707. The primary goal of statutory interpretation is to discern the intent of the Legislature; the first step when doing so is to review the language of the statute. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). Undefined terms in a statute must be accorded their plain and ordinary meaning; a court may consult a dictionary regarding the ordinary meaning of a word. *Pierce v City of Lansing*, 265 Mich App 174, 178; 694 NW2d 65 (2005). "When the language of a statute is unambiguous, the Legislature's intent is clear and judicial construction is neither necessary nor permitted." *Odom v Wayne Co*, 482 Mich 459, 467; 760 NW2d 217 (2008) (citation and quotation marks omitted). Courts must enforce plain and unambiguous statutory language as written. *Herman*, 481 Mich at 366.

### B. DISCUSSION

I conclude that the circuit court correctly ruled that the structure at issue is a "county building" as that term is used in MCL 46.11(b) and also that the county has the authority to "erect" the structure by determining it is "necessary," MCL 46.11(d). The circuit court also correctly ruled that the county has the authority to "site" the building that has a normal purpose of training law enforcement officers in the use of firearms by discharging them from within the building. Further, the circuit court correctly ruled that the adjacent shooting range is ancillary and indispensable to the normal use of the building, giving the county use priority over township

-9-

ordinances. *Herman*, 481 Mich at 362 n 13, 368-369. Consequently, the circuit court properly granted defendants summary disposition under MCR 2.116(C)(10). *Maiden*, 461 Mich at 120.

Our Supreme Court held in *Pittsfield* that the authority to "site" buildings granted to counties by the CCA in MCL 46.11(b) and (d), had priority over a conflicting township zoning ordinance enacted pursuant to the authority of the Township Zoning Act, MCL 125.271 *et seq.*[4] *Pittsfield*, 468 Mich at 703-704, 710-715. The Court made this determination on the basis of legislative intent expressed in the text of the Legislation pertaining to the two local governments. *Id*. at 709-710. The Court found that the county authority to "site" a county building was only limited by "any requirement of law that the building be located at the county seat." MCL 46.11(b). Specifically, "the Legislature, by explicitly turning its attention to limits on the county siting power and deciding on only one limitation, must have considered the issue of limits and intended no other limitation." *Pittsfield*, 468 Mich at 711. The Court rejected the township's argument that its zoning had at least equal priority on the basis that the Legislature had exempted certain activities from township zoning but not county activity. The Court found this argument "flawed because this approach would cause MCL 46.11(b) to be mere surplusage." *Id*. at 713.

As discussed already, the underlying litigation in these cases resulted in our Supreme Court deciding whether the county's authority to "site" county buildings extended to ancillary uses of the property adjacent to the building. *Herman*, 481 Mich 352. The property at the time of the prior litigation consisted of fourteen acres with only an indoor firearms classroom training building and nearby outdoor shooting ranges. The Court focused on the term "site" and held that "land uses that are ancillary to the county building and not indispensable to its normal use are not covered by the CCA's grant of priority over local regulations." *Id*. at 354. Thus, the Court held that a county's authority under the CCA extended only to erecting and siting buildings and such land uses that are ancillary to the county building and indispensable to its normal use. *Herman*, 481 Mich at 368-369. Finding the CCA unambiguous, the Court held that a county's power to "site" is limited by the language of the statute to "county buildings." *Id*. at 366-369. The Court explained that a plain reading of MCL 46.11(b) and (d),

> leads to the conclusion that the Legislature intended to give counties the power to "site" and "erect" "county buildings." Each time the CCA grants the power to site, it invariably relates that power to "buildings." Notably, the Legislature never semantically links the power to site with any nonbuilding activity or land use. In other words, the CCA does not give counties the power to site a county "activity" or county "land use"; rather, it always relates its grant of siting power to "buildings." This leads to the conclusion that the siting power is limited to buildings. [*Herman*, 481 Mich at 366-367.]

Ultimately, the Court held that the outdoor shooting ranges then existing did not have priority over the township ordinances "because they are land uses that are not indispensable to the normal use" of the classroom firearms training building. *Id*. at 354, 370. The Court further reasoned that while the outdoor shooting ranges complimented the normal use of the building for

---

[4] Local zoning is now authorized by the Michigan Zoning Enabling Act, MCL 125.3101 *et seq.*

-10-

indoor classroom training and practice, the outdoor shooting ranges used for outdoor shooting practice and training were not indispensable to that normal use of the building, which was indoor classroom training. *Id*. at 370-371. "For purposes of CCA priority, a building's normal use only extends to the actual uses of that particular building because, again, that is the extent of the power granted to the county by the CCA." *Id*. at 370.

Thus, for the county to site and erect the structure at issue in contravention of township ordinances, the structure must be a "building" that has as its normal use the discharging of firearms within its confines. The CCA does not define the term "building" so that it is appropriate to consult a dictionary in regard to its plain and ordinary meaning. *Pierce*, 265 Mich App at 178, citing *Ali*, 218 Mich App at 584. Plaintiffs unpersuasively argue that cases like *Pierce* and *Ali* that discuss the plain meaning of the term "building" are not reliable authority because they discuss that word's meaning as used in the "public building" exception to governmental tort immunity, MCL 691.1406. I find these cases important because they discuss the plain meaning of the term "building," which also is at issue in the present cases. So, because the analysis in *Pierce* and *Ali* regarding the plain and ordinary meaning of the undefined term "building" is based on the proper technique of consulting dictionary definitions for that purpose, *Johnson v Pastoriza*, 491 Mich 417, 436; 818 NW2d 279 (2012), they are worthy of consideration regarding the plain meaning of the term "building" as used in the CCA. Furthermore, individual words in a statute must be read in context and in light of the purpose of the statute as a whole. *Herman*, 481 Mich at 366; *Sun Valley Foods*, 460 Mich at 237.

Based on the foregoing, the circuit court did not err by relying on *Ali* and dictionary definitions to determine that the shooting range structure was a "building" within the meaning of the CCA. The structure, similar to an open-on-one-side pole barn has a 43-by-20 foot concrete pad, with eight, six-inch-square posts cemented into the ground that support partial walls on three sides and a full roof. The structure was specifically designed to allow active shooting of firearms out the open side of the structure toward targets in the longest of the previously constructed shooting ranges, which are basically open spaces surrounded by earthen berms to prevent fired rounds from escaping the premises. The structure is permanent and has an overhang on the open side partially protecting shooters from the elements. This description fits within the definition of "building" found in *Merriam-Webster's Collegiate Dictionary* (11th ed): "a usually roofed and walled structure built for permanent use (as for a dwelling)."

The conclusion that the structure at issue is a "building" is also supported by this Court's opinions in *Ali* and *Pierce*. In *Ali*, the Court held a permanent, walled, bus passenger shelter made of Plexiglas and steel, which was designed to protect people from inclement weather was a building for purposes of the "public building" exception to governmental immunity. *Ali*, 218 Mich App at 585. The Court determined the plain meaning of the undefined statutory term "building" from dictionaries:

> "Building" is defined as a "relatively permanent, essentially boxlike construction having a roof and used for any of a wide variety of activities, as living, entertaining, or manufacturing," *The Random House College Dictionary: Revised Edition* (1984), and a "structure designed for habitation, shelter, storage, trade, manufacturing, religion, business, education and the like. A structure or edifice

-11-

enclosing a space within its walls, and usually, but not necessarily covered with a roof." Black's Law Dictionary (5th ed). [*Ali*, 218 Mich App at 584-585.]

Further, in *Pierce*, 265 Mich App at 178-180, the Court relied on *Ali* to find that a parking structure described as a relatively permanent, essentially box-like structure made of concrete, with a roof and enclosed on all sides by half-walls was a "public building" within the meaning of MCL 691.1406. Both *Pierce* and *Ali* distinguished *Freedman v City of Oak Park*, 170 Mich App 349; 427 NW2d 557 (1988). In *Freedman*, a covered park bench was determined not to be a "public building" within the meaning of MCL 691.1406. See *Pierce*, 265 Mich App at 179, and *Ali*, 218 Mich App at 585 (describing *Freedman* as involving "merely a portable bench with a roof over it"). Indeed, *Freedman* does not rest entirely on its determination that the covered park bench was not a building but instead concluded that the apparently portable structure was not dangerous or defective so as to support the plaintiff's tort claim. *Freedman*, 170 Mich App at 353-354. For these reasons, the circuit court properly distinguished *Freedman* and relied on *Ali* and dictionary definitions to conclude that the permanent box-like structure having a roof and partial walls and used for firearms training was a "building."[5] Moreover, because the county erected and maintained the building on property that the county possessed under a long-term lease, and the county used the structure for the lawful purpose of necessary firearms training for county law enforcement officers, the structure necessarily is a "county building" within the meaning of MCL 46.11(b) and (d).

Plaintiffs present several unavailing arguments contrary to the conclusion that the shooting range building used for discharging firearms has priority over the township's zoning ordinance. Plaintiffs first argue that the shooting range building is not "necessary" as that term is used in MCL 46.11(d) and that the phrase "necessary buildings for jails, clerks' offices, and other county buildings" limits the county's authority to "erect" and "site" buildings. Plaintiffs cite no authority for this argument. It is settled that an argument presented without supporting authority is abandoned on appeal. See *Houghton v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003). On the other hand, defendants cite *Pittsfield*, in which the Court opined that "the Legislature expressly stated only one limitation on the authority of the county to site buildings," and that "the Legislature, by explicitly turning its attention to limits on the county siting power and deciding on only one limitation, must have considered the issue of limits and intended no other limitation." *Pittsfield*, 468 Mich at 711. The one limit is found in MCL 46.11(b), which restricts the siting of a county building with respect to "any requirement of law that the building be located at the county seat."

I agree with the circuit court that the word "necessary" in MCL 46.11(d) only means that the county's authority to "erect" and "site" a building is limited to lawful purposes, i.e., ones not prohibited by a state statute or the Constitution. Contrary to plaintiffs' contention, the circuit court's ruling does not render the term "necessary" superfluous but rather recognizes the

---

[5] This conclusion is supported by the township's own zoning ordinance that defines "building" as a "structure," which in turn is defined as "[a]nything constructed or erected with a fixed location on the ground, or attached to something having a fixed location on the ground. . . . ."

traditional limits of judicial review of legislative acts in our constitutional system of separation of powers. The circuit court correctly ruled that although the county acted through a resolution to move its agents to erect and site the shooting range building, this action was legislative.[6] See *Blank v Dep't of Corrections*, 462 Mich 103, 122; 611 NW2d 530 (2000) (KELLY, J., opining that "passing a resolution to override rules promulgated by an executive branch agency is an inherently legislative action"); *Bengston v Delta Co*, 266 Mich App 612, 621-622; 703 NW2d 122 (2005) (noting legislative acts include passing an ordinance or resolution). Judicial review of legislative acts is deferential. For example, judicial review of the constitutionality of legislation is generally limited to whether the legislation has a rational basis. "Under rational-basis review, courts will uphold legislation as long as that legislation is rationally related to a legitimate government purpose." *Crego v Coleman*, 463 Mich 248, 259; 615 NW2d 218 (2000). "Rational-basis review does not test the wisdom, need, or appropriateness of the legislation, or whether the classification is made with 'mathematical nicety,' or even whether it results in some inequity when put into practice." *Id*. at 260 (citation omitted). "[I]f constitutionally empowered to act, 'the propriety, wisdom, necessity, utility, and expediency of legislation are exclusively matters for legislative determination.' " *Charles Reinhart Co v Winiemko*, 444 Mich 579, 600 n 38; 513 NW2d 773 (1994), quoting *Black v Liquor Control Comm*, 323 Mich 290, 296; 35 NW2d 269 (1948). So, whether the shooting range building was "necessary" was a legislative decision that the judiciary should not second guess. *Id*.

Plaintiffs next argue that the shooting range building does not come within the authority of MCL 46.11(b) because the building does not fit within the types of "county buildings" listed in MCL 46.11(d) ("jails, clerks' offices, and other county buildings"), citing the doctrine of *ejusdem generis* and the statement in *Herman*, 481 Mich at 367 n 14. The *Herman* Court held that sitting power in the CCA is limited to buildings, and highlighted this limitation by noting: "In fact, the CCA expressly includes examples that uniquely fit into the category of buildings: courthouses, jails, clerks' offices, and other county buildings."[7] *Id*. But, nothing in *Herman* indicates that the Court's footnote was intended as anything other than an extension of the Court's analysis that a county's authority to "site" county buildings, MCL 46.11(b), and "erect" necessary buildings, MCL 46.11(d), "does not equate to the power to review and approve site plans." *Herman*, 481 Mich at 365. Thus, the footnote merely accentuates the importance of the Court's holding that a county's CCA authority is limited to *buildings*, not activities or land uses.

Additionally, the circuit court correctly determined that "[t]he CCA is an unambiguous statute." *Herman*, 481 Mich at 366. An unambiguous statute must be enforced as written, and there is no need to resort to secondary rules of construction. See *People v Jacques*, 456 Mich 352, 355; 572 NW2d 195 (1998). "A plain reading of [MCL 46.11(b) and (d)] leads to the conclusion that the Legislature intended to give counties the power to 'site' and 'erect' 'county

---

[6] "Boards of supervisors shall have legislative, administrative and such other powers and duties as provided by law." Const 1963, art VII, § 8. Even assuming the county's action were administrative, because no hearing was involved, judicial review would be limited to whether the action was "authorized by law." Const 1963, art VI, § 28.

[7] It should be noted that the statute does not list "courthouses."

-13-

buildings.' " *Herman*, 481 Mich at 366. The Legislature has placed only one limit on this authority: "That limitation is that the county cannot use the power that was given in MCL 46.11 to site buildings if there is any other requirement of law that county buildings be located at the county seat." *Pittsfield*, 468 Mich at 711. In sum, there is nothing in the plain language of the CCA or our Supreme Court's opinions in *Pittsfield* and *Herman* that limits the authority of the county to siting particular kinds of county buildings.

Applying the doctrine of *ejusdem generis* does not alter this conclusion. Under this doctrine of statutory construction, "where a general term follows a series of specific terms, the general term is interpreted to include only things of the same kind, class, character, or nature as those specifically enumerated." *Neal v Wilkes*, 470 Mich 661, 669; 685 NW2d 648 (2004) (citation and quotation marks omitted). But where the general term or phrase comes before the more specific terms, the doctrine of *ejusdem generis* does not apply to limit the meaning of the more general term or phrase. *Brown v Farm Bureau Gen Ins Co*, 273 Mich App 658, 664; 730 NW2d 518 (2007). With respect to MCL 46.11(b) and (d), while the general phrase "other county building" follows the listing of "jails, clerk's offices" in subsection (d), the pertinent general term in that subsection, "necessary buildings," and the critical phrase "county building" in subsection (b), are located *before* the listing of types of buildings in subsection (d). Consequently, the doctrine of *ejusdem generis* does not apply to limit the meaning of the more general phrases of "necessary buildings," MCL 46.11(d), or "county building," MCL 46.11(b). *Brown*, 273 Mich App at 664. Moreover, as discussed already, nothing in the plain language of the CCA indicates that the Legislature intended to limit a county's authority "site" buildings. MCL 46.11(b). Thus, *ejusdem generis* simply does not apply. *Jacques*, 456 Mich at 357.

The circuit court also did not err by ruling that the county's use of an outdoor shooting range adjacent to the new building was ancillary and indispensable to the building's normal use. *Herman*, 481 Mich at 368-369. Plaintiffs' arguments to the contrary are based on the false premises that the adjacent outdoor shooting range was being used for "outdoor shooting" and "outdoor firearms training." While it is true that bullets fired inside the building travel to targets outside the building and located in what had previously been used as an outdoor shooting range, and the fired bullets are restrained from leaving the county's property by berms, the discharge of firearms (shooting) and the firearms' training occur within the confines of the building. Further, the facts are not disputed that the shooting range building was specifically designed and used for the purpose of shooting and firearms training from within the building. Consequently, shooting and firearms training are the normal uses of the shooting range building. "For purposes of CCA priority, a building's *normal use* only *extends to the actual uses of that particular building* because, again, that is the extent of the power granted to the county by the CCA." *Herman*, 481 Mich at 370 (emphasis added). Thus, the adjacent outdoor shooting range provides an ancillary and indispensable use: the placement of targets at which to shoot and the construction of surrounding berms to insure the safety and protection of the surrounding community from fired bullets. *Id*. at 357, 368-369.

I reject, as did the circuit court, plaintiffs' argument that outdoor shooting or outdoor firearms' training was the "primary" use of the property to which the building was the "ancillary" use. The county has the authority "to 'site' and 'erect' 'county buildings.' " *Herman*, 481 Mich at 366; MCL 46.11(b) and (d). When the county exercises this authority, the normal uses of the building have priority over local zoning and other local regulations to the

-14-

contrary. *Herman*, 481 Mich at 362, n 13. The CCA does not otherwise authorize the siting of a particular land use apart from the siting of a building, but *Herman* held that a county may "conduct ancillary land uses in order to make normal use of the building." *Id*. at 366-368. And, "the ancillary land use will only have priority over local regulations if it is indispensable to the building's normal use." *Id*. at 369. Thus, the proper analysis is to initially determine the normal use of the sited and erected county building and then determine whether any non-building use is indispensable to the building's normal use. See *Herman*, 481 Mich at 369-370. "In order to decide if this ancillary land use is indispensable to the normal use of the county's building, we must define the normal use of the county's building." *Id*. at 369. As discussed in the preceding paragraph, the county's "normal" use of the shooting range building was discharging firearms for the purpose of law enforcement officer training and the adjacent outdoor shooting range was an indispensable ancillary use to the building's "normal" use.

Plaintiffs only remaining argument is that the circuit court's ruling accords to counties unfettered authority to site any land use anywhere under the guise of conducting that use through the siting and erecting a building. This, however, is essentially a policy argument with respect to enforcement of MCL 46.11(b) and (d). But this Court must enforce an unambiguous statute as written. *Herman*, 481 Mich at 369. The legislative branch of government makes policy choices, and the judiciary may not interfere under the guise of statutory interpretation on the basis that legislation is perceived to be unjust, inconvenient, unnecessary, impolitic, unwise, unfair, or otherwise a bad policy choice. See *Johnson v Recca*, 492 Mich 169, 197; 821 NW2d 520 (2012); *Fowler v Doan*, 261 Mich App 595, 603; 683 NW2d 682 (2004).

For all of the foregoing reasons, I would affirm the circuit court's ruling that the county's authority under the CCA to "site" and "erect" buildings, MCL 46.11(b) and (d), has priority over the township ordinances of the township with respect to the shooting range building at issue. I would also affirm the circuit court's grant of summary disposition to defendants and all orders and judgments implementing the circuit court's ruling regarding MCL 46.11(b) and (d).

III.  ADDITIONAL ISSUES IN DOCKET NO. 325335

A.  RELIEF FROM THE PERMANENT INJUNCTION

Plaintiffs argue that the circuit court erred by relying on MCR 2.612(C)(1)(e) and "changed circumstances"—the county's new gun range structure—to modify its 2008 injunction. Plaintiffs argue that the circuit court found that the county had violated the injunction by resuming use of the shooting ranges in September 2013 before seeking a modification of the court's order but nevertheless failed to apply the doctrine of "clean hands" and deny the county equitable relief.

This court reviews the circuit court's decision regarding injunctive relief and its decision on a motion to amend the prior judgment for an abuse of discretion. *Michigan AFSCME Council 25 v Woodhaven-Brownstown School Dist*, 293 Mich App 143, 146; 809 NW2d 444 (2011); *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007). The circuit court abuses its discretion only when the court's decision is outside the range of reasonable and principled outcomes. *Michigan AFSCME Council 25*, 293 Mich App at 146 (a trial court's decision that is within the range of reasonable and principled outcomes is not an abuse of discretion and an injunction may always be modified if the facts support it).

The circuit court did not abuse its discretion by modifying the 2008 permanent injunction in accordance with the changed circumstances. "On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds: . . . it is no longer equitable that the judgment should have prospective application." MCR 2.612(C)(l)(e). Furthermore, "an injunction is always subject to modification or dissolution if the facts merit it." *Opal Lake Ass'n v Michaywe Ltd Partnership*, 47 Mich App 354, 367; 209 NW2d 478 (1973).

In this case, the facts had changed since the issuance of the 2008 injunction. Specifically, the circuit court correctly ruled that the county had the authority under MCL 46.11(b) and (d) to "site" and "erect" the shooting range building and also correctly ruled that the adjacent shooting range was an indispensable non-building use ancillary to the building's normal use of active shooting firearms training. The county's use of the building and adjacent shooting range thus had priority over the township's ordinances. *Herman*, 481 Mich at 362 n 13, 369-370. The circumstances had changed such that, with respect to the shooting range building and its adjacent range, the county was immune from enforcement of township regulations. *Id*. at 362, n 11, n 13. Because the underlying legal authority supporting the injunction with respect to the shooting range building and its adjacent range had been eliminated by the county's authority under the CCA, it was "no longer equitable that the [2008 injunction] should have prospective application." MCR 2.612(C)(l)(e). Based on the changed circumstances, the circuit court did not abuse its discretion by determining that the 2008 injunctive order should be modified. *Id*.; *Opal Lake Ass'n*, 47 Mich App at 367; *Michigan AFSCME Council 25*, 293 Mich App at 146.

Plaintiffs' arguments that the circuit court abused its discretion by failing to apply the doctrine of "clean hands" and by granting the county equitable relief by modifying its injunction are without merit. The clean hands doctrine provides "that one who seeks the aid of equity must come in with clean hands." *Stachnik v Winkel*, 394 Mich 375, 382; 230 NW2d 529 (1975) (citation and quotation marks omitted). The doctrine is based on the principle that a court of equity, as the enforcer of conscience and good faith, should not assist a wrongdoer. *Id*. Hence, the clean hands doctrine has been applied to deny equitable relief to parties who are themselves guilty of wrongful conduct. *Rose v National Auction Group*, 466 Mich 453, 463-464; 646 NW2d 455 (2002). But the clean hands doctrine is intended to preserve the integrity of the court, and it is discretionary with the court whether to invoke it. *Stachnik*, 394 Mich at 386.

In this case, because the circuit court determined that the county did not willfully violate the 2008 injunction and because the changed circumstances rendered prospective enforcement of an injunction regarding the shooting range building and adjacent range inequitable, the circuit court did not abuse its discretion by declining to invoke the doctrine of "clean hands" and instead granting partial equitable relief from the 2008 injunction. *Id*.; *Michigan AFSCME Council 25*, 293 Mich App at 146; *Ligon*, 276 Mich App at 124.

### B. ATTORNEY FEES UNDER MCL 600.1721

Plaintiffs also contend that the circuit court erred by not awarding attorney fees under MCL 600.1721 because plaintiffs suffered "actual loss"—attorney fees—as a result of defendants contemptuous conduct. Plaintiffs contend that the circuit court's reliance on *In re Bradley Estate*, 494 Mich 367, to grant defendant's summary disposition of plaintiffs' claim under § 1721 is

-16-

misplaced because *Bradley* is distinguished from this case because the plaintiff in *Bradley* sought damages for an underlying tort claim and in this case, plaintiffs sought attorney fees as an initial claim under § 1721 on the basis of the county's violation of the 2008 injunction. Plaintiffs also argue that *Bradley* does not extend beyond a "civil wrong" to criminal contempt, in which attorney fees may also be recovered. See *Taylor v Currie*, 277 Mich App 85, 100; 743 NW2d 571 (2007).

This Court reviews de novo a trial court's determination to grant summary disposition. *Odom*, 482 Mich at 466. A motion for summary disposition under MCR 2.116(C)(7) may assert that a claim is barred by immunity granted by law and may be supported or opposed by affidavits, depositions, admissions, or other documentary evidence. *Id*. The allegations of the complaint are accepted as true unless contradicted by documentary evidence. *Maiden*, 461 Mich at 119. The court properly grants the motion when the undisputed facts establish a party is entitled to judgment as a matter of law. *Odom*, 482 Mich at 466; MCR 2.116(C)(7) and (I)(1). Issues of statutory interpretation are reviewed de novo. *Bradley Estate*, 494 Mich at 377.

I find plaintiffs' efforts to distinguish *Bradley* unavailing. Although plaintiffs present a debatable point that *Bradley's* holding may not extend to criminal contempt, the circuit court granted defendants summary disposition as to plaintiffs' claim under MCL 600.1721 only with respect to *civil contempt*. The circuit court denied summary disposition with respect to *criminal contempt*, and after a trial, found defendants not guilty of criminal contempt. Plaintiffs' claim for attorney fees under § 1721 with respect to civil contempt is controlled by *Bradley's* holding that under the governmental tort liability act (GTLA), MCL 691.1401 *et seq*., governmental entities are immune from "tort liability" which includes claims for indemnification or compensatory damages under MCL 600.1721. *Bradley Estate*, 494 Mich at 371-372. Thus, the circuit court properly granted defendants summary disposition under MCR 2.116(C)(7) of plaintiffs' claims for damages resulting from defendants' civil contempt violation of the 2008 injunction.

Plaintiffs' argument that the holding of *Bradley Estate* does not apply to the facts of this case because criminal contempt was alleged is also unavailing. The Court's opinion in *Bradley Estate* does repeatedly refer to claims under MCL 600.1721 as being for a "civil wrong" based on "civil contempt." See *Bradley Estate*, 494 Mich at 371-372; 383 ("torts and contracts [are] the two types of civil wrongs"); 385; 393, 397. But a tort claim may also be based on intentional conduct that is criminal. The critical issue is whether a party seeks compensatory damages under MCL 600.1721, see *Bradley Estate*, 494 Mich at 389 n 54, 392 n 58 and 59, or whether there is only an effort to protect the integrity or authority of the court by punishing the contemptuous party. *Id*. at 394-396. Where a party seeks compensation or indemnification under MCL 600.1721, the Court's analysis regarding governmental immunity would still apply to such a claim whether the "alleged misconduct" or the "other breach of a legal duty" is labeled "civil" or "criminal" because if the action permits an award of damages as compensation for an injury caused by a noncontract civil wrong, "then the action, no matter how it is labeled, seeks to impose tort liability and the GTLA is applicable." *Bradley Estate*, 494 Mich at 389. See also *Taylor*, 277 Mich App at 100, holding that MCL 600.1721 makes no distinction between civil and criminal contempt, and its requirement of indemnification for actual loss applies even when a court imposes a criminal sanction.

Of course, as noted, the simple answer on the facts of this case is that the circuit court did not grant defendants summary disposition on the claim of criminal contempt but instead

-17-

conducted a trial, finding defendants not guilty of that charge. Thus, regardless of the merits of plaintiffs' argument that the holding of *Bradley Estate* does not preclude the application of MCL 600.1721 to cases of criminal contempt, "the possible effect of that statute in this case is nullified by the trial court's explicit finding that neither the Sheriff nor the board were in contempt . . . ." *Local 214 v Genesee Co Bd of Comm'rs*, 401 Mich 408, 410-411; 258 NW2d 55 (1977).

## C. CRIMINAL CONTEMPT

Plaintiffs assert that as a municipal corporation, the county acts through its agents and the county is charged with knowledge of all the county's agents acting within the scope of their authority. See *New Properties, Inc v Geo D Newpower, Jr, Inc*, 282 Mich App 120, 134, 139; 762 NW2d 178 (2009). Specifically, plaintiffs contend that the evidence showed that Commissioner Elliot, who was corporate counsel at the time of the entry of the 2008 injunction, and whose signature appears on the injunction in the circuit court file, had knowledge of the injunction that should have been imputed to the county. Plaintiffs' argument hinges on their contention that Commissioner Elliott's testimony that he did not recall the injunctive nature of the order when he voted in favor of the new structure in August of 2013 is not credible. Because Elliot's testimony was not credible, it would not support a finding of reasonable doubt whether the county had actual notice of the injunction. Instead, plaintiffs argue that Elliot's admissions and the other evidence established beyond any reasonable doubt that Elliott had knowledge, imputed to the county, of the entry of the injunction in November 2008. Thus, according to plaintiffs, the circuit court erred by finding the county not guilty of criminal contempt.

This Court reviews a trial court's decision on a motion to hold a party in contempt for an abuse of discretion. *DeGeorge v Warheit*, 276 Mich App 587, 591; 741 NW2d 384 (2007). "The abuse of discretion standard recognizes that there will be circumstances where there is no single correct outcome and which require us to defer to the trial court's judgment; reversal is warranted only when the trial court's decision is outside the range of principled outcomes." *Porter v Porter*, 285 Mich App 450, 455; 776 NW2d 377 (2009). The trial court's findings of fact in a contempt proceeding are reviewed for clear error and will be affirmed on appeal when supported by competent evidence. *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009). Clear error occurs only when the appellate court is left with the definite and firm conviction that a mistake was made. *Id*. In reviewing the trial courts findings, this Court will not weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings. *Id*.; *In re Kabanuk*, 295 Mich App 252, 256; 813 NW2d 348 (2012).

In a criminal contempt proceeding, "[a] party charged with criminal contempt is presumed innocent . . . and the contempt must be proven beyond a reasonable doubt." *Porter*, 285 Mich App at 456. In this case, the circuit court heard the testimony of all the witnesses, finding them credible, and weighed all the evidence. The circuit court determined that plaintiffs had not proved beyond a reasonable doubt that the county's violation of the 2008 injunction was a willful violation of a known legal duty. Thus, the circuit court concluded that plaintiffs had not proven beyond a reasonable doubt that the county was guilty of criminal contempt. Plaintiffs only claim on appeal is that the trial court erred in assessing the credibility of Commissioner Elliot. Because this Court will not second-guess the trial court's credibility determinations, plaintiffs' appeal must fail. *In re Kabanuk*, 295 Mich App at 256; *In re Contempt of Henry*, 282

Mich App at 668. The circuit court did not abuse its discretion by finding the county not guilty of criminal contempt. *Porter*, 285 Mich App at 455; *DeGeorge*, 276 Mich App at 591.

## IV. CONCLUSION

I would affirm the circuit court in both cases on all issues. Specifically, I conclude that the circuit court correctly ruled that the structure at issue is a "county building" as that term is used in MCL 46.11(b), and also that the county has the authority to "erect" the structure by determining it is "necessary," MCL 46.11(d). Further, the circuit court correctly ruled that the adjacent shooting range is ancillary and indispensable to the normal use of the building, thus giving the county use of the building and the adjacent shooting range priority over township ordinances. *Herman*, 481 Mich at 362 n 13, 368-369.

With respect to the other issues raised in Docket No. 325226, I conclude that the circuit court did not abuse its discretion by granting defendants partial equitable relief from the 2008 injunction. Furthermore, the circuit court did not err by denying plaintiffs an award attorney fees under MCL 600.1721. Finally, the circuit court did not abuse its discretion by finding the county not guilty of criminal contempt. I would affirm the circuit court in all respects.

/s/ Jane E. Markey